UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

COOK                                                  CIVIL ACTION

VERSUS                                                NO: 13-451

KIM SUSAN LLC ET AL.                                  SECTION: "J" (5)

**ORDER & REASONS**

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 104)** filed by Defendants Kim Susan, LLC (Kim Susan), Coastal Environmental Operations, Inc. (CEO), and Fluid Technology Services International, LLC (Fluid Technology); an opposition thereto filed by Plaintiff Patrick Cook (Rec. Doc. 110); and Defendants' reply. (Rec. Doc. 115) Having considered the motions and memoranda, the record, and the applicable law, the Court finds that Defendants' motion should be **GRANTED IN PART** for the reasons set forth more fully below.

**FACTS AND PROCEDURAL BACKGROUND**

This personal injury claim arises from an accident Plaintiff endured while disembarking from the M/V Katrina Fagan, a vessel owned and operated by Kim Susan. (Rec. Doc. 110, p. 1) Plaintiff alleges that the vessel was under charter to McMoran Oil and Gas Co. at all relevant times. Id. at 2. McMoran contracted with Quality Pre-Heat and Pressure Washers and CEO to clean the tanks aboard the vessel. Id. McMoran also contracted with Fluid Technology to supervise the tank cleaning operations.

Id. at 1-2. Plaintiff's employer, Quality Pre-Heat and Pressure Washers, assigned him to work as a tank cleaner aboard the M/V Katrina Fagan. Id.

The M/V Katrina Fagan arrived into port on July 17, 2012, to prepare for and undergo a Coast Guard inspection. Id. at 1, 3. At that time, Plaintiff alleges that the vessel's crew set out the gangway and "made an effort to 'secure' it as required by the applicable Coast Guard regulations." Id. at 3. Plaintiff subsequently boarded the vessel to conduct the tank cleaning operations. Id. at 1. On July 26, 2011, while Plaintiff was disembarking the vessel by descending the gangway, the gangway flipped. Id. at 1-3. Plaintiff fell from the gangway to the dock below and landed on his knees, causing injury. Id. At the time of the accident, the gangway was secured at the top to the ship with ropes tied to the top of the bulwarks rather than to the deck of the vessel. Id. at 3. At the bottom, the gangway rested on a small, movable set of stairs on the dock. Id.

Plaintiff filed suit in this Court on March 8, 2013, against Kim Susan and its insurer. (Rec. Doc. 1) In his complaint, Plaintiff alleged that the acts or omissions of Kim Susan and its crew caused his injury through the improperly positioned gangway. Id. at 2-3. Plaintiff further alleged that Kim Susan's conduct amounted to negligence per se because it failed to provide a safe means of ingress and egress to the

vessel, in violation of Coast Guard regulation. Id. at 3. Plaintiff seeks judgment for "an amount reasonable in the premises, punitive damages, costs, and any other relief which may be available under the law or in equity plus legal interest on all amounts awarded from the date of judicial demand until paid." Id. at 4. Plaintiff subsequently amended his complaint to add additional Defendants. (Rec. Docs. 14, 20, 68)

On January 2, 2015, Defendants Kim Susan, CEO, and Fluid Technology filed the instant *Motion for Partial Summary Judgment* on the issues of CEO and Fluid Technology's liability and the availability of punitive damages. **(Rec. Doc. 104)** Plaintiff opposed the motion on January 21, 2015.[1] (Rec. Doc. 110)

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility

---

[1] The Court granted Plaintiff a one-day extension in which to file his opposition, which otherwise would have been due January 20, 2015. (Rec. Doc. 109)

3

determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

4

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

## PARTIES' ARGUMENTS AND DISCUSSION

### A. Liability of CEO and Fluid Technology

Defendants argue that CEO and Fluid Technology should be dismissed because Plaintiff has no evidence connecting either party to the gangway, which Plaintiff asserts was the cause of his accident. (Rec. Doc. 104-1, pp. 4-6) Defendants rely on excerpts from Plaintiff's deposition in which he admits that he had no facts to show that either CEO or Fluid Technology were connected to the gangway in any way. Id. Defendants assert that CEO owned the dock where the vessel was moored and also took part in the tank cleaning operations aboard the M/V Katrina Fagan along with Plaintiff's employer. (Rec. Doc. 115, p. 2) Additionally, Fluid Heat was engaged to oversee all of the work being performed on the vessel. Id. Defendants argue that neither party owed a duty to Plaintiff to provide a safe work environment. Id. at 2-3. Consequently, Plaintiff cannot prove an element necessary to his negligence claim against CEO and Fluid Technology, and those parties should be dismissed. See id.; (Rec. Doc. 104-1, p. 6).

Plaintiff insists that testimony and evidence exist to "provide a basis of liability" against CEO and Fluid Technology. (Rec. Doc. 110, pp. 3-8) Plaintiff argues that the testimony of Jesus Barrios, a supervisor for CEO, reveals that a Fluid Technology employee was present on site to provide supervision of the tank cleaning work and to conduct safety meetings. Id. at 4. The deposition testimony of Ronald Machen, another supervisor for CEO, confirms that of Barrios and adds that CEO owns the dock where the M/V Katrina Fagan was moored. Id.  From this, Plaintiff concludes that there is evidence to show that Fluid Technology had control over the work site. Id. Plaintiff therefore argues that Fluid Technology had a "duty to ensure that the job site was safe and the workers were afforded safe work conditions." Id. at 5. Plaintiff further argues that Barrios' and Machen's testimony evinces CEO's control over the worksite because they were present to surpervise and "had the opportunity to observe any unsafe work conditions and the authority to correct those conditions." Id. Lastly, CEO owns the dock where the vessel was moored. Id. Plaintiff therefore argues that his claims against CEO and Fluid Technology should not be dismissed. Id. at 5-6.

Defendants seek summary judgment on the issue of CEO and Fluid Technology's liability, for which Plaintiff would bear the burden of proof. Defendants therefore call attention to

6

Plaintiff's inability to prove an element of Plaintiff's negligence claim against them—the duty element. In response, Plaintiff attempts to show that CEO and Fluid Technology had a duty to provide a safe workplace because of their presence at the jobsite; the fact that CEO owned the dock; and Fluid Technology's role as supervisor of the tank cleaning work. However, "[t]he primary responsibility for the safety of a ship repair worker or ship builder rests with his employer, the independent contractor . . . hired to perform the ship repair or shipbuilding task." Gonzalez v. United States, 588 F. Supp. 2d 747, 753-54 (S.D. Tex. June 18, 2008)(citing Pimental v. LTD Canadian Pacific Bul, 965 F.2d 13, 15 (5th Cir. 1992)). Additionally, the U.S. Court of Appeals for the Fifth Circuit has recognized that the vessel owes certain duties to its contractor's employees. Id. But courts generally have not imposed any special duties upon an independent contractor's fellow contractors. The testimony upon which Plaintiff relies is insufficient to show that CEO and Fluid Technology had a duty to provide Plaintiff with a safe workplace. Accordingly, the Court will grant Defendants' motion for summary judgment as to CEO and Fluid Technology's liability.

**B. Availability of Punitive Damages**

Defendants argue that Plaintiff's claim for punitive damages must be dismissed because they are unavailable under

recent, binding authority. (Rec. Doc. 104) According to Defendants, the Fifth Circuit recently held that a seaman and his survivors may not recover punitive damages. (Rec. Doc. 104-1, p. 7)(citing McBride v. Estis Well Serv., L.L.C., 768 F.3d 382, 406 (5th Cir. 2014)). The Court acknowledged that, with the Jones Act, Congress intended to provide seamen with the same remedy as that afforded to railroad workers under the Federal Employers' Liability Act (FELA). Id. Under FELA, allowable damages were limited to the "liability for the loss and damage sustained by relatives dependent upon the decedent[, that is,] a liability for the pecuniary damage resulting to them and for that only." Id. (internal quotation marks omitted)(quoting Mich. Cent. R.R. Co. v. Vreeland, 227 U.S. 59, 69 (1913)). Because punitive damages are "designed to punish the wrongdoer rather than compensate the victim," the Fifth Circuit held that they were not recoverable under FELA and were therefore unavailable under the Jones Act. Id. at 8. Defendants argue that McBride applies here and precludes Plaintiff from recovering punitive damages in this case.

Plaintiff argues that punitive damages remain recoverable under the general maritime law. (Rec. Doc. 110, pp. 6-7) Plaintiff insists that the U.S. Supreme Court affirmed the availability of punitive damages under maritime law in Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009), and that no

8

Supreme Court case or act of Congress since has indicated to the contrary. Id. at 6. Plaintiff argues that McBride limits only the availability of punitive damages for seamen, for whom Congress provided a remedy under the Jones Act. Id. at 7. McBride therefore does not apply here to limit the availability of punitive damages under the general maritime law for Plaintiff, a non-seaman. Id.

In McBride, the Fifth Circuit addressed the issue of whether punitive damages are available under the Jones Act and general maritime law to injured seaman or the survivors of deceased seamen. McBride, 768 F.3d at 385. The court began by noting that when Congress enacted the Jones Act, 46 U.S.C. § 30104, in 1920, it "extended to seamen the same negligence remedy for damages afforded to railroad workers under the Federal Employers' Liability Act (FELA)." Id. at 385-86. Although FELA did not define the damages available under the act, the Supreme Court later provided such a definition in Michigan Central Railroad Co. v. Vreeland, 227 U.S. 59 (1913). Id. at 386. The court in Vreeland held that the damages available under FELA were limited to pecuniary damages, or those that "flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the deceased had not died from his injuries." Id. Therefore, when Congress subsequently enacted the Jones Act and incorporated FELA

9

therein, it likewise incorporated the Vreeland limitation on nonpecuniary damages. Id. at 387 (discussing Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990)). Consequently, a seaman's or a seaman's suvivor's recovery from injury or death occurring as a result of negligence is limited to pecuniary damages under the Jones Act. McBride, 768 F.3d at 387-89. Additionally, because courts cannot extend to judicially created causes of action that do not require a showing of fault, such as actions for unseaworthiness under the general maritime law, "more expansive remedies" than those Congress has allowed for victims of negligence, courts have not permitted punitive damages for claims of unseaworthiness under general maritime law. Id. at 388 (quoting Miles, 498 U.S. at 32-33). "In other words, because nonpecuniary damages are not available under the Jones Act (a fault-based scheme) even in cases of egregious conduct, it would not make sense to permit such damages under an unseaworthiness claim, which [does] not require[] any showing of fault." Id. at 388 n.27. This rule applies equally to personal injury and wrongful death claims by seaman or their survivors. Id. at 388-89. The Fifth Circuit therefore held that injured seamen and the survivors of deceased seamen could not recover punitive damages under either the Jones Act or general maritime law. Id. at 391.

Here, Defendants seek to impose the McBride limitation on nonpecuniary damages to a nonseaman pursuing a personal injury

claim. (Rec. Doc. 104-1, pp. 7-8; Rec. Doc. 115, pp. 3-4). None of the authorities to which Defendants have cited compels this result. Likewise, the Court concludes that the underlying reasoning of McBride does not support such a limitation here. No act of Congress applicable to Plaintiff incorporated a limitation on punitive damages that should further limit the availability of punitive damages under the general maritime law as it applies to him. Absent any such limitation, the Court concludes that punitive damages remain available to Plaintiff in this case. See generally 1 ROBERT FORCE & MARTIN J. NORRIS, THE LAW OF MARITIME PERSONAL INJURIES § 11:8 (5th ed. 2004)(discussing the availability of nonpecuniary damages, including punitive damages, to nonseaman under the general maritime law); id. (Supp. 2014-2015)(same).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Partial Summary Judgment* **(Rec. Doc. 104)** is **GRANTED IN PART**. The motion is **GRANTED** with respect to the liability of CEO and Fluid Technology. It is **DENIED** with respect to Plaintiff's claim for punitive damages.

New Orleans, Louisiana this 11th day of February, 2015.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE